UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:25-wi-00003-MTS |
| JARROD BELL, | ) ) ) |
| Defendant. | ) ) |

**GUILTY PLEA AGREEMENT**

Come now the parties and hereby agree, as follows:

**1. PARTIES:**

The parties are the defendant Jarrod Bell, represented by defense counsel Tara Crane, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

**2. GUILTY PLEA:**

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Count 1 (wire fraud) of the Information, the United States also agrees that no further federal prosecution will be brought in this District relative to the defendant's fraudulently obtaining Paycheck Protection Program loans and COVID-19 EIDL loans, of which the Government is aware at this time.

1

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree to jointly recommend a sentence of probation at the time of sentencing.

The defendant also agrees, pursuant to the guilty plea to Count 1, to forfeit to the United States all property subject to forfeiture under the applicable statute(s), including but not limited to: a forfeiture money judgment equal to the total value of PPP loans and EIDL loans that defendant obtained as a result of the offense.

### 3. ELEMENTS:

#### a. Counts 1 (Wire Fraud)

As to Count 1, the defendant admits to knowingly violating Title 18, United States Code, Section 1343, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

*One*, the defendant voluntarily and intentionally participated in a scheme to defraud Harvest Small Business Finance out of money, by means of material false representations or promises;

*Two*, the defendant did so with the intent to defraud; and

*Three*, the defendant used, or caused to be used, an interstate wire communication, that is the submission of a Paycheck Protection Program loan application, in furtherance of, or in an attempt to carry out, some essential step in the scheme.

## 4. FACTS:

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

Between in or around July 2020 and in or around October 2021, the defendant Jarrod Bell ("Bell") engaged in a scheme to fraudulently obtain Paycheck Protection Program ("PPP") loans. On March 13, 2020, the President declared a national emergency under Section 501(b) of the Robert T. Stafford Disaster Relief and Emergency Assistance Act ("Stafford Act") in response to the COVID-19 pandemic. The President also subsequently authorized major disaster declarations for all fifty states under Section 401 of the Stafford Act. The PPP, created by the Coronavirus, Aid, Relief, and Economic Security ("CARES") Act, was a COVID-19 pandemic relief program administered by the Small Business Administration ("SBA") that provided forgivable loans to small businesses for job retention and certain other expenses. PPP loan funds were authorized, transferred, disbursed, and paid in connection with the COVID-19 pandemic emergency and major disaster declarations.

The PPP permitted participating third-party lenders to approve and disburse SBA-backed PPP loans. To obtain a PPP loan, a qualifying business submitted a signed PPP loan application and was required to certify, among other things, the average monthly payroll expenses and the number of employees. The amount of PPP loan for which a qualifying business was eligible was based on these certifications. The types of businesses eligible for a PPP loan also included individuals who were self-employed or operated as a sole proprietorship, and who did not have any employees. Instead of payroll expenses, such individuals were required to certify their annual income, as typically reported to the Internal Revenue Service on Form 1040, Schedule C, for a

given tax year. Applicants had to certify that PPP loan proceeds were to be used for eligible expenses, namely payroll. Borrowers who obtained a PPP loan were permitted to apply for a "Second Draw" PPP loan, provided they certified that they had used the proceeds from the "First Draw" PPP loan on eligible expenses. Finally, to obtain forgiveness of a PPP loan, a borrower had to submit a PPP loan forgiveness application and certify that the loan proceeds had been spent on payroll costs and other permitted expenses.

Benworth Capital Partners LLC ("Benworth Capital") and Harvest Small Business Finance ("Harvest SBF") were third-party participating lenders in the PPP. Womply was a technology company that provided an Internet-based platform to receive and process PPP loan applications for third-party participating PPP lenders, including Harvest SBF. Womply processed applications for PPP loans submitted to Harvest SBF through an Internet-based web portal that was hosted on servers located in Virginia and Oregon.

Between April 2021 and May 2021, Bell submitted two (2) fraudulent PPP loan applications for PowerHouse Expansion Group LLC ("PowerHouse Expansion"), a corporation registered with the state of Missouri in Bell's name, to PPP lenders. Bell submitted the first application to Benworth Capital on April 22, 2021 and the second to Harvest SBF on May 21, 2021. On each application, Bell falsely represented that PowerHouse Expansion had an annual gross income of $47,896 in 2020. In addition, with each application, Bell submitted a fraudulent IRS Form 1040, Schedule C (Profit or Loss from Business), purporting to have been filed by Bell with his 2020 federal income tax return and reporting $47,896 in gross income from PowerHouse Expansion in 2020. In fact, Bell did not make this amount of money from PowerHouse Expansion, he knowingly fabricated this amount of gross income, and he falsified the tax forms for the purpose of inflating the amount of PPP loans that he could receive. As a result of these misrepresentations,

Benworth Capital and Harvest SBF approved Bell's PPP loan applications and each disbursed $9,978 in PPP loan proceeds into a Navy Federal Credit Union account in the name of PowerHouse Expansion, which Bell owned and controlled.

Bell spent the loan proceeds on personal expenses unrelated to PowerHouse Expansion, such as personal shopping, dining, and cash withdrawals. Bell also submitted a fraudulent application for PPP loan forgiveness for at least one of his PPP loans. On October 11, 2021, Bell submitted a loan forgiveness application for his first PPP loan and falsely represented that he spent all of the PPP loan proceeds on payroll. Based on this misrepresentation, the loan forgiveness application was approved, meaning Bell no longer had to repay the loan.

As to Count 1, on or about May 21, 2021, having devised the above-described scheme to defraud third-party lenders participating in the PPP and to obtain money in the form of PPP loans by means of materially false and fraudulent representations, and for purposes of executing this scheme, Bell submitted a fraudulent PPP loan application for approximately $9,978 to Harvest SBF. The submission of this PPP loan caused the transmission of an interstate wire communication from Bell's residence in Bridgeton, Missouri to Womply servers located outside the state of Missouri.

In addition, Bell submitted at least one fraudulent application for Economic Injury Disaster Loan Program ("EIDL") loans on behalf of PowerHouse Expansion. EIDL was a program administered by the SBA that provided low-interest financing to small businesses, renters, and homeowners in regions affected by federally declared disasters. The CARES Act authorized the SBA to provide EIDL loans to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic. To obtain a COVID-19 EIDL loan, a qualifying business was required to submit to the SBA an application and to provide information about the

business's operations, such as the number of employees, gross revenues for the 12-month period preceding the COVID-19 pandemic, and cost of goods sold during the same period. In addition to loans, businesses could request and receive a cash advance grant up to $10,000, which was not required to be repaid.

In his EIDL application for PowerHouse Expansion, Bell falsely represented the business's number of employees and gross revenue and cost of goods during the 12 months prior to the COVID-19 pandemic. As a result of this application, Bell was approved for a cash advance by the SBA, and the SBA issued a $2,000 cash advance to the Navy Federal Credit Union account for PowerHouse Expansion.

In summary, between July 2020 and October 2021, Bell submitted fraudulent applications totaling fraudulently obtained a total of $21,956 in PPP loans and EIDL funds.

## 5. STATUTORY PENALTIES:

The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty under Count 1 is imprisonment of not more than 20 years, a fine of not more than $250,000, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than 3 years.

## 6. U.S. SENTENCING GUIDELINES (2024 MANUAL):

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the applicable U.S. Sentencing Guidelines Total Offense Level provisions.

a. **Chapter 2 Offense Conduct:**

**(1) Base Offense Level:** The parties agree that the base offense level is 7, as found in Section 2B1.1(a)(1).

**(2) Specific Offense Characteristics:** The parties agree that the following Specific Offense Characteristics apply:

The parties agree that 4 levels should be added pursuant to Section 2B1.1(b)(1)(C), because the loss exceeds $15,000, but does not exceed $40,000.

The parties agree that 2 levels should be added pursuant to Section 2B1.1(b)(12), because the offense involves conduct described in 18 U.S.C. § 1040.

**b. Chapter 3 and 4 Adjustments:**

**(1) Acceptance of Responsibility:** The parties recommend that two levels should be deducted pursuant to U.S.S.G. § 3E1.1(a) because Defendant has clearly demonstrated acceptance of responsibility. If this deduction is applied, and if Defendant is otherwise eligible, then the Government moves to deduct one additional level pursuant to U.S.S.G. § 3E1.1(b), because Defendant timely notified authorities of the intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the government may present said evidence to the court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

**(2) Adjustment for Certain Zero-Point Offenders:** If the Court determines that the defendant does not receive any criminal history points from Chapter 4, Part A, then the parties agree that two levels should be deducted under Section 4C1.1(a), because the defendant meets all of the criteria under Section 4C1.1(a)(2) through (a)(10).

**(3) Other Adjustments:** The parties agree that the following additional adjustments apply: none.

**c. Estimated Total Offense Level:** The parties estimate that the Total Offense Level is 11, unless a two-level reduction under Section 4C1.1(a) applies based on the Court's determination of the defendant's criminal history.

**d. Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

**e. Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

## 7. WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:

**a. Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

  **(1) Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea.

  **(2) Sentencing Issues:** The parties agree to waive the right to appeal all sentencing issues, provided that the Court sentences the defendant to the parties' joint recommendation of probation. Otherwise, the adversely affected party—the defendant if the sentence is higher, or the Government if the sentence is lower—reserves the right to appeal only sentencing issues related to: (1) application of Sentencing Guideline offense-level adjustments (including those based on criminal history) not specifically set forth in the plea agreement or non-application of adjustments specifically set forth in the agreement; (2) calculation of the defendant's criminal history category; or (3) substantive reasonableness.

 **b. Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

 **c. Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8. OTHER:**

 **a. Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to

9

sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

**b. Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies**: Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

**c. Supervised Release**: Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed. These conditions will be restrictions on the defendant to which the defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished.

**d. Mandatory Special Assessment**: Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $100, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

**e. Possibility of Detention**: The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

**f. Fines, Restitution and Costs of Incarceration and Supervision**: The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration and costs of supervision. The defendant agrees that any fine or restitution imposed by the Court will

be due and payable immediately. Pursuant to Title 18, United States Code, Section 3663A, an order of restitution is mandatory for all crimes listed in Section 3663A(c). Regardless of the Count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Section 3663A(b) and the amount of loss agreed to by the parties, including all relevant conduct loss. The defendant agrees to provide full restitution to all victims of all charges in the indictment.

      **g. Forfeiture:** The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees to abandon [his/her] interest in all seized items and further agrees that said items may be disposed of or destroyed by law enforcement officials in any manner without further notice. By abandoning these items, the defendant waives any future rights to receive additional notice, a valuation of the items, or the opportunity to submit a claim to contest the disposition or destruction of the items that may exist under any policies or procedures of the seizing agency(ies).

      The defendant agrees the stipulated facts above are sufficient to support forfeiture of certain assets pursuant to the applicable forfeiture authorities. Defendant specifically agrees to the entry of a forfeiture money judgment against the defendant and in favor of the Government in the amount of $21,956. The defendant agrees the Court may enter a consent preliminary order of forfeiture any time before sentencing, and such Order will become final as to the defendant when it is issued and will be part of the sentence. The defendant agrees not to object to any administrative, civil, or criminal forfeiture brought against any assets subject to forfeiture. The defendant will execute any documents and take all steps needed to transfer title or ownership of said assets to the government and/or to rebut the claims of nominees and/or alleged third party owners. The defendant

knowingly and intelligently waives all constitutional, statutory, and equitable challenges to any forfeiture carried out in accordance with this plea agreement, including but not limited to that defendant was not given adequate notice of forfeiture in the charging instrument.

### 9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:

In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely

12

and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

The guilty plea could impact defendant's immigration status or result in deportation. In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

## 10. VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

## 11. CONSEQUENCES OF POST-PLEA MISCONDUCT:

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any condition of release that results in revocation, violates any term of this guilty plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in

its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

12. **NO RIGHT TO WITHDRAW GUILTY PLEA:**

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

2/28/25
Date

JONATHAN A. CLOW
Assistant United States Attorney

2-28-25
Date

JARROD BELL
Defendant

2-28-25
Date

TARA CRANE
Attorney for Defendant

14